Learned, J.
[Reviewed the facts and concluded that upon the uncontradicted papers, defendant appeared to be liable ; and that the question whether the people were the proper parties ought not to be passed upon on such a motion as the present. He then proceeded as follows:]
Third. Is the bail too large ?
It is not disputed that the provision of the Constitution as to excessive bail applies to criminal actions only. And even if it applied to civil actions, the questions would still have to be answered, what is excessive, or, in other words, what is the rule by which bail in civil actions is regulated? The Code has substituted an order of arrest for the old practice of a bailable copias ad respondendum. But there appears to be no substantial change as to the meaning or effect of the proceeding. Under the old practice the sheriff, on. arrest, took a bail bond conditioned that the defendant would put in special bail, as it was termed. The special bail, if excepted to, were required to justify in double the sum in which the defendant was held to bail. The bail piece, which was the paper signed by the special bail, did not in its language express the nature of their liability. It stated that the defendant “ was delivered to bail on the taking of his body to ” the jail, naming them. But their liability ceased, if, after judgment and execution, the defendant rendered himself a prisoner. And this appears to be true under section 187 of the Code. So that the nature of the liability of bail, under the Code, seems to be substantially the same as that of special bail under the old practice. The principles, therefore, as to the amount of bail to be required would seem to be the same now as formerly.
How, the rule in this respect, under the old practice, was clear enough. The amount was to be large enough to cover all probable damages (1 Burr. Pr., *150 96). In an action of assumpsit, it was usual to insert a sum equal to twice the plaintiff’s demand (Ib.). In actions for injuries to the person and other similar actions, which were not bailable as of course, it was necessary to procure a judge’s order. But the amount of bail was always fixed by the amount of the defendant’s liability in the action. The amount was never arbitrary. The duty of the judge, when he had any duty in the matter, was, to ascertain what, in all probability, was the amount for which the defendant was liable. The counsel for the defendant in this case have strongly urged that as the undertaking of the bail is that the defendant shall at all times render himself amenable to the process of the court, and to such as may be issued to enforce the judgment, the inquiry should be, what is sufficient to secure that end ? But I have already shown that the obligation of special bail under the old practice was no greater than this. All that they undertook was that they would surrender the defendant on a ca. sa. after judgment. In fact, the obligation of bail at present, instead of being less, is rather more. For they undertake that the defendant shall at all times render himself amenable to process ; while the obligation of special bail under the old practice only extended to a surrender on final process. I do not see, therefore, that the Code has made any change as to the principles applicable to the amount of bail. And so far as practice under the Code is concerned, I believe that the uniform rule has been that the probable amount of the defendant’s liability determines the amount of bail.
If the amount involved were not so large in this case, there would probably be no question as to the rule. I am not certain that in a proper case this rule may not be modified. In fact, it was modified in the-present action. The alleged conspirators, as set forth in the complaint and shown by the affidavits as yet un *151 disputed, have taken more than three million five hundred thousand dollars. Indeed, the demand of the complaint, embracing other alleged fraudulent transactions than those connected with Garvey and Ingersoll, was for more than six. million dollars. If the defendant Tweed were a culpable party to the transactions, he would, of course, be liable for the whole amount taken, even though he should only have himself received one million dollars. But the bail was fixed at the last sum, the amount which appeared by the affidavits to have actually passed into his hands. It seemed that there could be no hardship to the defendants, if, in an action against them, as alleged joint wrongdoers, they were required to give bail, not to the whole amount alleged to have been taken, but only to the amount which one of them was, by direct proof, shown to have received. It was then insisted, as it has been since, on the part of the plaintiffs, that the bail should have been three million five hundred thousand dollars ; and, perhaps, on general principles, the plaintiffs’ counsel were right.
Whenever the public are deeply moved against alleged frauds, and energetic measures have been taken to seek out and punish the guilty, there is danger that the excitement may go too far. It is then especially the duty of courts to be unbiased by any popular feeling, and to do justice calmly and without prejudice. Deeply impressed with this thought, I have given to the motion before me my best and most earnest consideration, under a feeling of responsibility commensurate with the importance of the case, and I can come to no other conclusion than that I ought not to vacate the order or to reduce the bail.
Motion denied.
*152 In the case of People v. Connolly, a similar motion was made, at the same time, based, however, on defendant’s affidavit denying any participation in the moneys fraudulently obtained, and alleging inability to obtain bail in the amount required.
In this case the court, taking into account these circumstances,—held, that in the exercise of a reasonable discretion, a modification of the strict rule was proper, and reduced the bail to five hundred thousand dollars.
On appeal to the general term both the above orders were affirmed, in January, 1872.